Approved: _____
STEVEN J. KOCHEVAR
Assistant United States Attorney

Before:   THE HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

22 mj 3841

- - - - - - - - - - - - - - - -X
                              :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA      :
                              :   Violation of
          - v. -              :   18 U.S.C. §§ 1349 and
                              :      2326
                              :
ERROL ALVERANGA               :   COUNTY OF OFFENSE:
DONA TAYLOR-ALVERANGA,        :   SULLIVAN
     a/k/a DONA TAYLOR-SAWO   :
JHENELLE YING,                :
JUSTINE YING,                 :
     Defendants.              :
                              :
- - - - - - - - - - - - - - - -X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     DELEASSA PENLAND, being duly sworn, deposes and says that
she is a Special Agent with the U.S. Attorney's Office –
Southern District of New York ("USAO-SDNY"), and charges as
follows:

### COUNT ONE
### (Conspiracy to Commit Mail and Wire Fraud)

     1.   From at least  in or about 2015 through at least in or
about 2022, in the Southern District of New York and elsewhere,
ERROL ALVERANGA, DONA TAYLOR-ALVERANGA, a/k/a, DONA TAYLOR-SAWO,
JHENELLE YING, and JUSTINE YING, the defendants, and others
known and unknown, willfully and knowingly, did combine,
conspire, confederate, and agree together and with each other to
commit mail and wire fraud, in violation of Title 18, United
States Code, Sections 1341 and 1343, to wit, ALVERANGA, TAYLOR-
ALVERANGA, JHENELLE YING, and JUSTINE YING engaged in a
telemarketing scheme which was intended to and did defraud
dozens of elderly victims over the age of 55 years old of
hundreds of thousands of dollars, by falsely informing the
victims they had won monetary prizes and deceiving them into

paying purported fees to obtain their supposed prize, using interstate telephone calls and mailings in furtherance of the scheme.

2.    It was a part and an object of the conspiracy that ERROL ALVERANGA, DONA TAYLOR-ALVERANGA, a/k/a, DONA TAYLOR-SAWO, JHENELLE YING, and JUSTINE YING, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place and cause to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and received and cause to be taken and received therefrom, such matters and things, and would and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

3.    It was a further part and an object of the conspiracy that ERROL ALVERANGA, DONA TAYLOR-ALVERANGA, a/k/a, DONA TAYLOR-SAWO, JHENELLE YING, and JUSTINE YING, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 2326.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.    I am a Special Agent with the USAO-SDNY and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law

enforcement agents, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Overview of the Conspiracy

5.    Based on my investigation, including, among other things, my review of documents and records produced in response to grand jury subpoenas, my review of publicly available information, interviews of witnesses, and my training and experience, I have learned the following regarding a fraudulent advance fee scheme engaged in by ERROL ALVERANGA, DONA TAYLOR-ALVARENGA, a/k/a, DONA TAYLOR-SAWO, JHENELLE YING, and JUSTINE YING, the defendants:

        a. As set forth in more detail herein, ERROL ALVERANGA, DONA TAYLOR-ALVERANGA, a/k/a, DONA TAYLOR-SAWO, JHENELLE YING, and JUSTINE YING, the defendants, are engaged in a scam perpetrated against dozens of elderly individuals to falsely inform them they have won a monetary prize in order to deceive them into paying thousands of dollars in fees in advance to obtain their purported prize (the "Elder Fraud Scheme").

        b. In connection with the Elder Fraud Scheme, I have interviewed elderly individuals (the "Elder Victims") who were notified by phone that they had won a sweepstakes, lottery, or prize and then were each induced to pay thousands of dollars in purported taxes or fees in order to receive their winnings, which they were directed to mail to addresses controlled by the defendants. The elderly individuals never received any winnings.

## The Elder Fraud Scheme

6.    Based on my interviews of the Elder Victims, the Elder Fraud Scheme was perpetrated as follows: An Elder Victim, typically living alone, received a telephone call from an unknown individual, sometimes identified as "David Miller," who told the Elder Victim that he or she had won a lottery or sweepstakes. The Elder Victim was further informed that to

receive the prize money associated with the lottery or sweepstakes, the Elder Victim must first pay taxes or other fees.  The Elder Victim was instructed to send a check, money order, or other payment to a certain address via mail or wire.

7.  Once the Elder Victim sent the initial money, the Elder Victim often then received additional calls indicating that there were additional fees or taxes and that the Elder Victim was required to send more money.  In some cases, a family member or employee at the Elder Victim's bank attempted to stop the Elder Victim from making the requested payments.  In no case did the Elder Victim in fact receive any prize money.  Sometimes, after the Elder Victim stopped making payments, either because of family or bank intervention, or because the Elder Victim became suspicious of the scheme, the Elder Victim received calls from other individuals who stated that they were from the government, or a bank, and requested additional payments from the Elder Victim.  Despite efforts by some Elder Victims to change their phone numbers, some of them continued to be harassed by such phone calls.

8.  I interviewed Elder Victim-1, who, at the time, was 86 years' old and lived alone in Massachusetts.  Based on my interview of Elder Victim-1, my review of documents provided by Elder Victim-1, and my review of bank records, I have learned the following:

a. In response to calls following the pattern described above, on or about May 7, 2018, Elder Victim-1 remitted two cashier's checks, one in the amount of $30,000 carrying check number 10143342 and one in the amount of $7,000 carrying check number 99069034, made payable to Jhenelle Ying. On or about May 10, 2018, Elder Victim-1 remitted an additional cashier's check, in the amount of $30,000 and carrying check number 1226897, made payable to Jhenelle Ying.

b. Elder Victim-1 retained a copy of a United Parcel Service ("UPS") shipment receipt with a May 7, 2018, ship date showing a shipment from Elder Victim-1 to Jhenelle Ying at an address on Nob Hill Lane, Sunrise Florida, 33351 ("Address-1"). Elder-Victim-1 also retained a copy of a United States Postal Service ("USPS") Priority Mail Express tracking label showing a mailing to Jhenelle Ying at Address-1 on or about May 7, 2018, although a USPS tracking record of this mailing, also retained by Elder Victim-1, shows that it was marked undeliverable as addressed.  Elder Victim-1 also retained handwritten notes including the name "Jhenelle Ying" and Address-1.

c. I have reviewed bank records for two bank accounts in the name of Jhenelle Ying.  These bank records show that one bank account ("Jhenelle Ying Account-1") received $30,000 from Elder Victim-1 on or about May 8, 2018, from a check carrying number 10143342 and received $30,000 from Elder Victim-1 on or about May 14, 2018, from a check carrying number 1226897.  The records for the other bank account ("Jhenelle Ying Account-2") show that the second account received $7,000 from Elder Victim-1 on or about May 8, 2018, from a check carrying number 99069034.

d. In response to calls following the pattern described above, on or about May 8, 2018, Elder Victim-1 remitted a check in the amount of $30,000 and carrying number 1226892, made payable to Justine Ying.

e. Elder Victim-1 retained a copy of a UPS shipment receipt with a May 8, 2018, ship date showing a shipment from Elder Victim-1 to "Justine Wyng" at Address-1.  Elder Victim-1 also retained handwritten notes including the name "Justine Wyng" and Address-1, with "30" also noted, as well as handwritten notes including "Jutine Ying" and Address-1.

f. I have reviewed bank records for a bank account in the name of Justine Ying ("Justine Ying Account-1").  These records show Justine Ying Account-1 received $30,000 from Elder Victim-1 from a check carrying number 1226892, on or about May 9, 2018.

g. In response to calls following the pattern described above, on or about May 14, 2018, Elder Victim-1 remitted a check in the amount of $30,000 carrying the number 1226901, made payable to Errol Alveranga.

h. Elder Victim-1 retained a copy of a UPS shipment receipt with a May 14, 2018, ship date showing a shipment from Elder Victim-1 to Errol Alveranga at an address in Monticello, New York ("Address-2").[1] He also retained a copy of an envelope with Elder Victim-1's name and address as the return address in the upper left corner of the envelope and the name Errol Alveranga and Address-2 in the center of the envelope.  Elder Victim-1 also retained handwritten notes including the name "Errol Alveranga" and Address-2, with "30,000" also noted.

---

[1] There are some variations in the spelling of Address-2 in the documents I have reviewed where it appears.

i. I have reviewed bank records for a bank account in the name of Errol Alveranga and Dona Taylor-Sawo at Address-2 ("Alveranga-Taylor Account-1"). These records show Alveranga-Taylor Account-1 received $30,000 from Elder Victim-1 from a check carrying number 1226901, on or about May 16, 2018, although this money was later returned due to bank intervention.

j. In response to calls following the pattern described above, Elder Victim-1 also sent payments or materials to other individuals not named herein.

9. I interviewed a relative of Elder Victim-2, who, at the time, was a woman living in Tulsa, Oklahoma, who suffered from Alzheimer's. Based on my interview of the relative of Elder Victim-2, my review of documents provided by Elder Victim-1, and my review of bank records, I have learned the following:

a. In response to calls following the pattern described above, Elder Victim-2 made out three checks, bearing numbers 2014, 2015, and 2016 and each in the amount of $20,000. Elder Victim-2 sent check number 2014 to Justine Ying, check number 2015 to "Jhenell" Ying, and check number 2016 to Errol Alveranga.

b. The relative of Elder Victim-2 provided an image of one of the checks, bearing number 2015. The check was made out to Jhenelle Ying, dated December 6, 2018, and signed by Elder Victim-2. Elder Victim-2's name and address are listed on the check. The back side of the check is endorsed with the signature shown in the following image:

c. Based on my review of bank records, I know that Jhenelle Ying Account-2 received $20,000 from Elder Victim-2 from a check bearing number 2015, on or about December 14, 2018, although this money was later returned due to bank intervention. I also know that Justine Ying Account-1 received $20,000 from Elder Victim-2 from a check bearing number 2014, on or about December 13, 2018. I have also reviewed bank records for a bank account in the name of Errol Alveranga and Dona Taylor-Sawo at

Address-2 ("Alveranga-Taylor Account-2").  These records show Alveranga-Taylor Account-2 received $20,000 from Elder Victim-2 from a check carrying number 2016, on or about December 14, 2018.

10.  I interviewed Elder Victim-3, who was at that time a resident of Dekalb, Illinois and older than 65.  Based on my interview of Elder Victim-3, my review of bank records, and my review of other business records, I have learned the following:

a. In response to calls following the pattern described above, on or about December 21, 2016, Elder Victim-3 remitted a cashier's check in the amount of $11,000, bearing number 732230, made payable to Errol Alveranga.

b. I have reviewed bank records for a bank account in the name of Errol Alveranga ("Errol Alveranga Account-1"). These records show Errol Alveranga Account-1 received $11,000 from Elder Victim-3 from a check carrying number 732230, on or about December 23, 2016.

c. Some of the calls to Elder Victim-3, wherein he was instructed to send payments to pay taxes on a prize (which he never received), came from the phone number 929-575-4755 (the "4755 Number").  Based on records obtained from a company that provides internet phone and fax functionality for businesses (the "Internet Phone Company"), I have learned that the 4755 Number is a phone number tied to a specific Internet Phone Company User ID and account.  Based on records from the Internet Phone Company and bank records, I know that four payments have been made to this account from a bank account in the name of Dona Taylor-Sawo at Address-2.  Call records from the Internet Phone Company show multiple calls from the 4755 Number to a number belonging to Elder Victim-3 between December 2016 and February 2017.  Elder Victim-3 told me, in sum and substance, that he had sent multiple payments to an individual named Dona Taylor via a money transfer company around the same time period.

11.  Bank records show that on or about November 29, 2017, Errol Alveranga withdrew $5,500 in cash from a bank account in his name at the same bank as Jhenelle Ying Account-1.  On the same day, $9,000 was deposited into Jhenelle Ying Account-1. For that $9,000 deposit, Errol Alveranga's name is listed on the deposit slip, but with Jhenelle Ying's account number.  On the deposit slip, the amount $5,500 is written but changed to $9,000, with Errol Alveranga's initials next to the changed number.

12.   Bank records also show that on or about May 10, 2019, Jhenelle Ying Account-2 received a $500 money order and a $1,000 money order from Errol Alveranga; that on or about July 26, 2019, Jhenelle Ying Account-2 received a $500 money order and two $1,000 money orders from Errol Alveranga; and that on or about December 6, 2019, Jhenelle Ying Account-2 received a $1,000 money order from Errol Alveranga.  Bank records also show that on or about October 13, 2020, Jhenelle Ying Account-2 received two $1,000 money orders from Errol Alveranga; that on or about October 26, 2020, Jhenelle Ying Account-2 received a $1,000 money order from Errol Alveranga; and that on or about November 13, 2020, Jhenelle Ying Account-2 received two $1,000 money orders from Errol Alveranga.

13.   I have reviewed bank records for accounts belonging to ERROL ALVERANGA, DONA TAYLOR-ALVARENGA, a/k/a, DONA TAYLOR-SAWO, JHENELLE YING, and JUSTINE YING, the defendants.  In these bank records, I have identified payments made to the defendants from at least seventy individuals, including Elder Victim-1, Elder Victim-2, and Elder Victim-3, that I believe to be associated with the Elder Fraud Scheme, on the basis of the age of certain of the individuals involved; the handwriting on relevant payment documents, which, based on my training and experience, I believe to be the handwriting of elderly people; the amounts of payments involved, typically thousands of dollars in round amounts; and the geographic dispersion of the individuals involved. Specifically, based on my review of bank records, at least approximately $1.3 million associated with the Elder Fraud Scheme from approximately sixty different victims has been deposited in bank accounts controlled by ALVERANGA or TAYLOR-ALVERANGA between 2015 and 2022, although some portion of that money has been returned due to bank intervention.  In addition, based on my review of bank records, at least $460,000 associated with the Elder Fraud Scheme from approximately twenty different victims, including approximately six victims that had also sent payments to ALVERANGA or TAYLOR-ALVERANGA, has been deposited into bank accounts controlled by JHENELLE YING or JUSTINE YING between 2018 and 2021, although some portion of that money has been returned due to bank intervention.  To identify victims and payments associated with the Elder Fraud Scheme, I reviewed handwriting on certain checks, which appeared to me to be written by elderly individuals, based on my training and experience, given the shaky nature of the handwriting that is typical of an elderly individual.  I also used personal identifying information on certain checks to determine that the accounts were associated with individuals over 60 years old.

14.  Between on or about July 27, 2015, and August 6, 2015, an individual, Elder Victim-4, who is currently approximately 94 years of age, sent nine payments, totaling $4,450, to Dona Taylor-Sawo through a payments and money-transfer company ("Company-1").  Based on records from Company-1, Elder Victim-4 was in Huntington Beach, California when Elder Victim-4 sent these payments.  Also based on records from Company-1, the recipient of these payments picked up each of them at a large retailer in Monticello, New York; a gas station in Monticello, New York; or a check cashing business in Mount Vernon, New York. For seven of the nine payments, the recipient's address is listed as Address-2, with some variations in spelling, and no recipient address is provided for the other two payments.  For a July 30, 2015 payment, in the amount of $900, records from Company-1 indicate that the recipient, identified as Dona Taylor-Sawo, presented photo identification to pick up the payment.  The number for the photo identification matches the image of a New York driver's license I have reviewed in the name of DONA TAYLOR-ALVERANGA, the defendant.

15.  Based on my review of bank records, I know that, in or about March 2018 and in or about July 2018, Alveranga Account-1 received $57,300 from checks written from an account in the name of two individuals sharing the same last name with an address in Huntington Beach, California ("Victim Account-1"), one of whom was Elder Victim-4.  I believe the other individual listed on Victim Account-1 is deceased.  A bank account in the name of Dona Taylor ("Taylor Account-1") received $6,700 from checks from Victim Account-1 in or about September 2018.  Based on the handwriting on the checks from Victim Account-1, the age of Elder Victim-4, the geographic location of Elder Victim-4, and the large and round payment amounts, I believe the payments described herein from Elder Victim-4 to Errol Alveranga and Dona Taylor-Sawo are the result of the Elder Fraud Scheme.

16.  On or about July 21, 2018, an account at a bank ("Bank-1") in the name of Jhenelle Ying ("Jhenelle Ying Account-3") received $20,000 from a check written from an account in the name of two individuals with an address in Warwick, Rhode Island ("Check-1").  One of the individuals is deceased, and the other is currently approximately 92 years of age ("Elder Victim-5").  Based on my training and experience, the handwriting on Check-1 is typical of an older person's handwriting and, on the basis of the age of the individual involved, the geographic location of the individual, the handwriting on Check-1, and the large and round amount of Check-1, I believe that Check-1 was the result

of the Elder Fraud Scheme.  Bank-1 returned the $20,000 from Check-1 and decided to close Jhenelle Ying Account-3.  After the decision to close the account, the holder of Jhenelle Ying Account-3 called Bank-1.  On the call, the holder of Jhenelle Ying Account-3 stated, in sum and substance, that her name is Jhenelle Ying, that her address is Address-1, and that she deposited Check-1.

17.   On or about March 4, 2021, an individual identifying herself as Justine Ying attempted to cash four money orders, totaling $4,400, at a branch of a non-bank consumer financial services provider ("Check Cashing Company-1").  The money orders came from an individual who is currently approximately 72 years of age with an address in Belgrade, Montana ("Elder Victim-6"). Based on my training and experience, I know that the handwriting on the money orders, specifically the writing of the name of Elder Victim-6, is typical of the handwriting of an older person.  Based on the age of Elder Victim-6, her handwriting, her geographic location, and the large and round amount of the payments involved, I believe that the money orders were the result of the Elder Fraud Scheme.  The individual attempting to cash the money orders told Check Cashing Company-1, in sum and substance, that they were for a car payment.  The individual attempting to cash the money orders presented a driver's license at Check Cashing Company-1.  The image and information on the driver's license match the image and information for JUSTINE YING, the defendant, that I have reviewed from the Florida Department of Highway Safety and Motor Vehicles.

18.   Based on my conversations with other law enforcement officers, I know that, on or about April 28, 2022, a law enforcement agent observed a male individual exit the apartment at Address-2 at approximately 8:10 AM, enter a Jeep registered to Dona Taylor-Sawo, and drive away.  The male individual fit the description of ERROL ALVERANGA, the defendant, based on an image and information from the New York Department of Motor Vehicles.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ERROL ALVERANGA, DONA TAYLOR-SAWO, a/k/a, DONA TAYLOR-ALVERANGA, JHENELLE YING, and JUSTINE YING, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

DELEASSA PENLAND
Special Agent
U.S. Attorney's Office – Southern
District of New York

Sworn to before me
this 29 th day of April, 2022

THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

11